UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS DEON BERRY,

                 Petitioner,              Case Number: 01-10328-BC
                                             Honorable David M. Lawson

v.

DENNIS M. STRAUB,

                 Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       The petitioner, Douglas Deon Berry, a state inmate incarcerated at the G. Robert Cotton

Correctional Facility in Jackson, Michigan, has filed a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254. He is represented by counsel. The petitioner was convicted of manslaughter,

Mich. Comp. Laws § 750.321, and possession of a firearm in the commission of a felony ("felony

firearm"), Mich. Comp. Laws § 750.227b in the Wayne County, Michigan Circuit Court. He was

sentenced to a prison term of ten to fifteen years for the manslaughter conviction and two years for

the felony firearm conviction. Berry argues that his conviction is constitutionally infirm due to

errors in the jury instructions covering the elements of the crime, the burden of proof, and reasonable

doubt. He also believes his sentence is grossly disproportionate to the crime and therefore is

unconstitutional. The respondent maintains that one of the alleged grounds for relief is procedurally

defaulted and the rest lack merit. Although the respondent's procedural defense fails, the Court

finds that the grounds for relief have no merit and therefore will deny the petition.

I.

The petitioner's conviction arises out of the shooting death of Sahir Shlemon at Jimmy's Party Store in the city of Detroit on May 1, 1997. Shlemon died as a result of a gunshot wound to the chest. The petitioner was originally charged with first-degree murder, assault with intent to commit murder, and felony firearm possession. He pleaded not guilty and proceeded to trial with a jury.

The trial testimony of Haitham Soffo, a cashier and manager at Jimmy's Party Store, established that Shlemon was an employee at the store and that the petitioner was a regular customer. Soffo testified that the petitioner had gotten into an argument with a store manager on the Saturday before the shooting. During the argument, the petitioner said he was going to "burn this store." Trial Tr., 12/15/1997, at 23.

Soffo testified that the petitioner came into the store three or four times on Thursday, May 1st, the day of the shooting. The first time, at approximately 5:00 p.m., the petitioner attempted to cash a check. Soffo told the petitioner that he could not cash the check because it was too old. The petitioner became agitated and cursed at Soffo, who responded in kind. The petitioner threatened "I'll fuck you up." *Id*. at 30. Soffo testified that he emerged from behind the bulletproof glass after putting a knife in his jacket because he saw the petitioner had a hand in his pocket and suspected the petitioner might have a weapon. Soffo knew that the knife's handle was visible to the petitioner. After confronting the petitioner outside the bulletproof glass, Soffo returned to the protected area; the petitioner stayed for a few minutes, cursing, and then he left. Soffo testified that the petitioner then telephoned the store, cursing.

The petitioner returned to the store a couple of hours later, taking a photograph of Soffo and telling him, "I got your picture and you're not going nowhere." Tr., 12/15/1997, at 36. Shlemon, the homicide victim, also was in the store at the time. The petitioner threw quarters at him and attempted to buy a cigar. The victim threw the quarters back and argued with the petitioner, who then left the store.

When the petitioner returned a few hours later with a friend and tried to make a purchase for which he did not have enough money, the petitioner and Soffo began to argue. Soffo testified that he told the petitioner he should come back tomorrow to talk to his boss, but the petitioner said, "I'm not going nowhere, I'm going to take you today." *Id.* at 44. The petitioner began pounding on the bulletproof glass, shaking the cigarette packs off the shelves until they fell on Shlemon. Soffo testified that as he turned to call the police, Shlemon took an empty 12-ounce bottle of beer out of the garbage and left the bulletproof area. Soffo heard three or four gunshots; when he went to help Shlemon, he saw that Shlemon had been shot in the chest. Soffo then heard two more gunshots, one of which struck Shlemon.

Shonda Griffin, a customer in the store on the night of the shooting, saw the petitioner arguing with two employees who were behind the bullet proof glass. Griffin testified that she heard the petitioner say he was going to kill everyone in the store as he pounded on the glass. She saw the petitioner throw an unopened bottle of beer on the ground. She saw the petitioner walk toward the front door and say to someone, "Give me my motherfuckin' gun because I'm fixing to kill everybody up in this bitch." Tr., 12/15/1997, at 75. Griffin then saw the victim leave the bulletproof glass area with a bottle and tell the petitioner to get out of the store. Griffin heard gunshots; she and Soffo then pulled Shlemon, who had been shot, behind the counter.

-3-

The petitioner testified in his own defense. He said that the third time he went to the party store on May 1st, he attempted to purchase a cigar, but Shlemon refused to sell him one. The petitioner acknowledged that he became annoyed and threw a beer bottle on the ground. He started to walk out of the store when a friend known as Little Joe gave him a warning, causing the petitioner to look over his shoulder and see Shlemon coming at him with something in his hand. The petitioner asked Little Joe for a gun and fired at Shlemon three or four times. The petitioner testified that he did not know if he had shot Shlemon. He then left the store and threw the gun in a dumpster.

the trial court instructed the jury on murder, manslaughter, and self-defense. The court repeated some of the instructions in response to the jury's questions. On December 17, 1997, the jury found the petitioner guilty of manslaughter and felony firearm. Three weeks later, the petitioner was sentenced to a prison term of ten to fifteen years for the manslaughter conviction, to be served consecutively to two years' imprisonment for the felony firearm conviction.

The petitioner filed an appeal in the Michigan Court of Appeals, raising the following issues:

I.    The trial court committed reversible error when it failed to give proper instructions regarding the necessary elements of the lesser included offense of manslaughter, and failed to distinguish between voluntary [and] involuntary manslaughter in instructing the jury on this lesser included offense, and erroneously accepted a general verdict of manslaughter, thereby denying the defendant due process pursuant to U.S. Const. Ams. V, XIV; and Mich. Const. 1963, Art. 1, § 17.

II.   The trial court committed reversible error when it gave supplemental instructions on the defense of self defense, but failed to mention that the defendant did not bear the burden of establishing self defense and that the burden was on the prosecutor to disprove self defense, thereby denying the defendant due process pursuant to U.S. Const. Ams. V, XIV; and Mich. Const. 1963, Art. 1, § 17.

III.  The trial court committed reversible error in erroneously instructing the jury on the concept of reasonable doubt and erroneously instructed the jury that they would have a "duty" to convict the defendant in certain situations,

-4-

thereby denying the defendant the right to due process pursuant to U.S. Const. Ams. V, XIV; and Mich. Const. 1963, Art. 1, § 17.

IV.    The imposition of 10 to 15 years on Defendant's conviction is grossly disproportionate in light of the offense and the offender since it exceeds the top end of the sentencing guidelines' range and amounts to the absolute maximum sentence allowable under law, thereby denying him the right to due process at sentencing, pursuant to U.S. Const. Ams. V, VI, XIV; and Mich. Const. 1963, Art. 1, §16, 17.

V.     Defendant is entitled to a resentencing because the trial court made an independent finding that he was actually guilty of murder [in] contravention [of] the jury verdict of manslaughter, thereby denying the defendant due process at sentencing, pursuant to U.S. Const. Ams. V, XIV; and Mich. Const. 1963, Art. 1, § 17.

The State court of appeals affirmed the petitioner's convictions and sentences but remanded the case to the trial court for the purpose of completing the sentence information report guideline departure form. *People v. Berry*, No. 210038 (Mich. Ct. App. Jan. 4, 2000). The petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal because "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Berry*, No. 116321 (Mich. Sept. 26, 2000).

Thereafter, the petitioner filed the petition for a writ of habeas corpus in this Court raising claims I through IV as recited above.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering

-5-

applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner's claims relating to alleged deficiencies in the jury instructions are: (1) the trial court failed to instruct the jury regarding the elements of the offense of manslaughter and failed to distinguish between voluntary and involuntary manslaughter; (2) the trial court incorrectly

instructed the jury that a killing cannot be manslaughter unless the defendant responds instantly to provocation; (3) the trial court failed to define the intent necessary to satisfy a manslaughter conviction; (4) the trial court's instruction on the malice requirement for second-degree murder was incomplete; (5) the trial court's supplemental jury instructions regarding self-defense were unbalanced and prejudicial where the court did not remind the jury that the prosecution bore the burden of proving that the petitioner did not act in self-defense; and (6) the trial court erroneously instructed the jury regarding the concept of reasonable doubt.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (quoting *Cupp*, 414 U.S. at 146). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission[] or an incomplete instruction[] is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). On habeas review, this Court is bound by the state court's interpretation of state law. *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005).

-8-

1.

The trial judge gave the following instruction on manslaughter:

Now, you may also consider the lesser offense of manslaughter.  Manslaughter is an unlawful killing of one person by another under provocation.

Now, he's provoked by an act by one party and that act must be an act that would provoke an ordinary person to act blindly.  It says, ordinary person, but this ordinarily causes another person to act in fury without thinking, and the killing must be done at the time that the person is provoked.

In other words, if you are insulted by someone on Monday and you come back on Wednesday, the statute, the law says – specifically says, if it's done under provocation, it has to be done right then while the person is acting in the heat of passion and before time has passed for the blood to cool.  It has to be done immediately.  So if a person is infuriated by saying some act, that is, he's thoroughly insulted by and he acts in the heat of passion immediately and that is the kind of an act that would cause an ordinary person to so react, that would be what we call Manslaughter.  It has to be done instantly.

One of the examples would be, if somebody just without your causing it at all, start spitting in your face and you turned around and picked up a piece of wood and hit them upside the head without thinking, you can consider that as the definition of Manslaughter.

However, if that same person who was so insulted waits two or three days and goes back after that person who did it, you can infer that time has passed for the passions to cool and that person has had an opportunity to reflect.

So your choices in Count-I would be, you can you do [sic] find the defendant guilty of Murder in the First Degree; or Murder in the Second Degree; or you can you do [sic] find him guilty of Manslaughter; or you could find him not guilty.

Trial Tr., 12/17/1997, at 56-57.  The petitioner argues that this instruction is erroneous because the

trial court did not explain properly the elements of voluntary manslaughter and failed to distinguish

between voluntary and involuntary manslaughter, which he argues should have been included as a

lesser cognate offense.

The petitioner's failure to object to the jury instructions caused the Michigan Court of Appeals to use a relaxed standard of review: manifest injustice. That court rejected the petitioner's arguments with these words:

> Defendant further asserts that the trial court erred in failing to properly distinguish between involuntary and voluntary manslaughter. Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty. *People v. Clark*, 453 Mich. 572, 578; 556 N.W.2d 820 (1996). Involuntary manslaughter is a cognate lesser included offense of murder. *People v. Heflin*, 434 Mich. 482, 495; 456 N.W.2d 10 (1990). An instruction on a cognate offense is proper only where it is consistent with the evidence and the defendant's theory of the case. *People v. Lemons*, 454 Mich. 234, 254; 562 N.W.2d 447 (1997). Because there was no evidence that defendant was doing an unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm or acting negligently, and defendant claimed that he was acting in self-defense, an instruction on involuntary manslaughter was not warranted. Accordingly, the trial court did not err in failing to distinguish between involuntary and voluntary manslaughter.

The court also explained:

> Although the trial court did not specify, a cursory review of its instruction reveals that the jury was instructed on voluntary manslaughter. The elements of voluntary manslaughter are (1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions. *People v. Sullivan*, 231 Mich. App. 510, 518; 586 N.W. 2d 578 (1998) . . . . The trial court's instruction on manslaughter adequately conveyed what the jury had to find in order to convict defendant of voluntary manslaughter.

*People v. Berry*, No. 210038, slip op. at 2-3.

The Sixth Circuit has held that where the state court has "reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) (en banc). The petitioner has not pointed to any evidence that would

-10-

contradict the State court of appeals' finding. He has failed to offer any construction of the facts that would fit a theory of involuntary manslaughter. Rather, it appears more likely that the manslaughter conviction resulted from a determination of imperfect self-defense, which is a form of *voluntary* manslaughter. *See People v. Kemp*, 202 Mich. App. 318, 323, 508 N.W.2d 184, 187 (1993). In any event, the holding of the Michigan Court of Appeals on this issue tracked the facts in the trial record, and it certainly was not contrary to or an unreasonable application of Supreme Court precedent. *See Bradshaw*, 126 S. Ct. at 604.

2.

Next, the petitioner argues that the trial court's voluntary manslaughter instruction was incorrect because the jury was told that the defendant must react instantly to the provocation. The Michigan Court of Appeals addressed the issue as follows:

> Defendant complains that the instruction was flawed because the trial court stated that a person has to act instantly. We disagree. Although the trial court stated that the killing "has to be done immediately," it went on to explain that the killing must have resulted from an emotional excitement and must occur before the person has had a reasonable time to calm down. Taken as a whole, the instruction was proper. See *People v. Daoust*, 228 Mich. App. 1, 14; 577 N.W. 2d 179 (1998) ("Instructions as to the jury should be considered as a whole rather than extracted piecemeal to establish error.").

*People v. Berry*, No. 210038, slip op. at 2.

Although the trial court's use of the word "immediately" could have been misleading if not viewed in context, the Michigan Court of Appeals' holding that the instruction taken as a whole conveyed to the jury the proper elements of voluntary manslaughter was a correct statement of Michigan law. Even if the jury misinterpreted the instructions to mean that a defendant must react "instantly" to a provocation in order to reduce the crime of murder to commit manslaughter, such a misinterpretation did not affect the petitioner's rights; the jury did find him guilty of

-11-

manslaughter.  The petitioner was convicted by a jury that was instructed on the necessary elements of the offense of conviction under State law.  The Due Process Clause does not require more.  The State may define the conduct it intends to punish as criminal and prescribe punishments.  *Payne v. Tennessee*, 501 U.S. 808, 824 (1991) (stating that "[u]nder our constitutional system, the primary responsibility for defining crimes against state law, fixing punishments for the commission of these crimes . . . rests with the States . . . subject to the overriding provisions of the United States Constitution").  The Due Process Clause requires only that the jury be told those elements and that they may convict only on proof beyond a reasonable doubt.  *See generally Mullaney v. Wilbur*, 421 U.S. 684, 700 (1975).

3.

The petitioner next claims that the trial court misinstructed the jury on the intent element of manslaughter.  The petitioner argues that the *mens rea* for second-degree murder and voluntary manslaughter are identical except that voluntary manslaughter requires a finding of provocation, but the jury was not advised of that distinction.  He further argues that the trial court omitted the intent element of voluntary manslaughter, thus removing one factual element of the crime from the jury's consideration.

The Michigan Court of Appeals rejected this claim:

Defendant also argues that the trial court failed to define the intent for the state of mind necessary to satisfy a manslaughter conviction.  An essential element of the crime of voluntary manslaughter is the intent to kill or commit serious bodily harm. *Hess, supra* at 38.  Murder and voluntary manslaughter are both homicides and share the element of being intentional killings.  However, the element of provocation that characterizes the offense of voluntary manslaughter separates it from murder.  *Id.* In the present case, the court first gave the jury instructions on first- and second-degree murder.  The court then instructed the jury on voluntary manslaughter. Defendant did not argue at trial that the killing of the decedent was accidental or the result of negligence.  Moreover, there is no indication in the record that the jury was

-12-

confused regarding the distinctions between first-degree murder, second-degree murder, and voluntary manslaughter. Accordingly, we find no manifest injustice.

*People v. Berry*, No. 210038, slip op. at 2.

The trial court's instruction regarding voluntary manslaughter was not a model of clarity, but the State appellate court found that it was adequate. The instruction focused on the element of provocation, which distinguished manslaughter from second-degree murder. The trial court conveyed to the jury that voluntary manslaughter requires an intentional killing. The language cobbled together by the trial court communicated those essential elements to the jury. This Court cannot find that the state court's decision holding that the instruction was adequate to describe the intent element of voluntary manslaughter was constitutionally improper.

4.

The petitioner argues that the trial court's instruction on the malice requirement for second-degree murder was incomplete. He says that the trial court erred in instructing the jury that "malice" means the intent to create high risk of death or great bodily harm because the court omitted the part of the instruction that the petitioner had to have acted with knowledge that death or great bodily injury is the probable result.

The Michigan Court of Appeals held that the trial court gave an appropriate instruction, stating:

> The element of malice for second-degree murder is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v. Mayhew*, 236 Mich. App. 112, 125; 600 N.W.2d 370 (1999). Contrary to defendant's assertion on appeal, the trial court did instruct the jury that malice is present where a person "does an act willfly [sic] and with disregard for the likelihood that the natural tendency would be to cause death or great bodily harm." We find neither error nor manifest injustice.

*People v. Berry*, No. 210038, slip op. at 2.

The Court has reviewed the second-degree murder instructions and concludes that the record supports the Michigan Court of Appeals' finding that the trial court correctly instructed the jury that second-degree murder requires a finding that a defendant intended to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or serious injury. The petitioner's argument that such an instruction was not given simply is not supported by the trial record.

5.

The petitioner also claims that he was denied due process by the trial court's supplemental jury instructions on self-defense. He argues that those supplements were unbalanced and prejudicial because the court did not remind the jury that the prosecution bore the burden of proving that the petitioner did not act in self-defense.

In the original jury instructions, the trial court gave the following instruction on self-defense and the burden of proof:

> There's no burden on the defendant at all. The only thing that any accused person has to do in a criminal case is showup [sic] in court. The burden never shifts, the burden is always on the People. Even though the defendant has asserted a defen[s]e in this case, it is the burden of the People to prove in this case that the defendant did not act in self-defense and that he was acting with intent to commit the crimes alleged . . . .

Trial Tr., 12/17/1997, at 45-46.

After a discussion with the attorneys outside of the jury's presence, the trial court gave additional instructions, including the following instruction regarding self-defense:

> The defendant does not have to prove that he acted in self-defense, the People must prove that he did not act in self-defense.

-14-

*Id.* at 70.

After deliberations commenced, the jury sent a note to the court asking for an explanation of self-defense. The trial court reinstructed the jury on self-defense, but did not reinstruct the jury on the burden of proof. The Michigan Court of Appeals held that the trial court's instructions were proper. The court explained:

> The trial court initially instructed the jury that the prosecution had to prove beyond a reasonable doubt that defendant did not act in self-defense. After the jury requested additional instruction, the court re-instructed the jury on self-defense but did not restate the burden of proof. However, given that the trial court twice correctly instructed the jury on the burden of proof, we find no manifest injustice.

*People v. Berry*, No. 210038, slip op. at 3.

The Court agrees with this conclusion. The Due Process Clause requires that the jury be informed of the presumption of innocence and the prosecutor's burden of proof. *See In re Winship*, 397 U.S. 358, 363 (1970). The State court determined that this constitutional requirement was fulfilled. That determination was not contrary to or an unreasonable application of federal law.

6.

Finally, the petitioner claims that the trial court erroneously instructed the jury on reasonable doubt because the reasonable doubt instruction impermissibly lowered the State's burden of proof. The trial court issued the following instruction:

> Now, there is what we call a burden – a standard of proof in a criminal case and that standard of proof is proof beyond a reasonable doubt. The definition rests with the words themselves, reasonable doubt. It's not unreasonable; it's a reasonable doubt. So when you're evaluating this case, keep in mind that we are not talking about things that you have heard on television or in the movies where you always hear about something proven beyond a shadow of a doubt or beyond all doubt. There's no such thing as proof beyond a shadow of a doubt, that was invented by fiction writers.

-15-

Reasonable doubt is the term, and "reasonable" means acting with reason and common sense. You bring your reason and common sense with you into the courtroom. A reasonable doubt is a fair and honest doubt. It is not a vain or imaginary or fictitious doubt. It is not hunch or feeling or possibility. It is a fair, honest and reasonable doubt. It is the kind of a doubt that would make you hesitate before making an important decision.

A reasonable doubt is not a fictitious or imaginary or hunch or possibility of innocence. Again, it is a fair, honest, and reasonable doubt. If you have an abiding conviction to a moral certainty that the People have met their burden of proof, it is your duty to bring back a verdict of guilty. If you do not have an abiding conviction to a moral certainty, it is your duty to bring back a verdict of not guilty.

Again, reasonable doubt rests on those words, a doubt that's based on reason and common sense. A fair, honest and reasonable doubt.

Trial Tr., 12/17/1997, at 46-47.

The Michigan Court of Appeals rejected the petitioner's claim in the following brief discussion:

Defendant additionally maintains that the trial court erroneously instructed the jury on the concept of reasonable doubt. We disagree. The trial court's explanation of reasonable doubt was nearly identical to that in CJI2d 3.2, which this Court has already determined presents an adequate instruction on the concept of reasonable doubt. *See People v. Cooper*, 236 Mich. App. 643, 656; 601 N.W.2d 409 (1999). The trial court did not err in instructing the jury that it had a duty to return a verdict of "guilty" if it was convinced that the prosecutor had met his burden of proof and a duty to return a verdict of "not guilty" if it was not so convinced.

*People v. Berry*, No. 210038, slip op. at 3.

It is, of course, beyond debate that the State must prove each element of a charged offense beyond a reasonable doubt in order to sustain a conviction. *See In re Winship*, 397 U.S. at 363. This burden of proof has been referred to as "an ancient and honored aspect of our criminal justice system," *Victor v. Nebraska*, 511 U.S. 1, 5 (1994), and, notably, it "plays a vital role in the American scheme of criminal procedure. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error." *Cage v. Louisiana*, 498 U.S. 39, 40-41 (1990),

-16-

*overruled in part on other grounds in Estelle v. McGuire*, 502 U.S. 62, 73 n.4 (1991) (quoting

*Winship*, 397 U.S. at 363) (citation omitted).  The Supreme Court has never prescribed specific

language that is required to convey the notion of reasonable doubt, and some courts even have found

that the term "reasonable doubt" is self-defining and urge trial courts to give no explanatory

instruction.  *See, e.g., United States v. Walton*, 207 F.3d 694, 696 (4th Cir. 2000) ("There is no

constitutional requirement to define reasonable doubt to a jury."); *United States v. Thomas*, 774 F.2d

807, 811-12 (7th Cir. 1985) ("We have repeatedly admonished district courts not to define

'reasonable doubt' . . . because often the definition engenders more confusion than does the term

itself.") (quoting *United States v. Martin-Trigona*, 684 F.2d 485, 493 (7th Cir. 1982)).  On habeas

review, the proper inquiry for a court assessing a reasonable doubt instruction is whether there is a

reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner.

*Victor*, 511 U.S. at 6.

  Here, the petitioner contends that the reasonable doubt instruction was deficient because it

contained language referring to "moral certainty" and "duty" that reduced the prosecution's burden

of proof.  The petitioner contrasts the instruction given in his case with a standard instruction for

reasonable doubt.

  The petitioner believes that the term "moral certainty" in the reasonable doubt instruction

impermissibly lowered the burden of proof.  In *Cage v. Louisiana*, the Supreme Court held that an

instruction that defined reasonable doubt in terms of "grave uncertainty" and "actual substantial

doubt," and required conviction based upon "moral certainty," could have been interpreted by a

reasonable juror as allowing a finding of guilt based upon a degree of proof below that required by

the Due Process Clause.  *Cage*, 498 U.S. at 41 (1990).  In reversing the conviction, the Supreme

-17-

Court found that terms like "substantial" and "grave," in common parlance, "suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Ibid.* When combined with the reference to moral certainty, a reasonable juror could have been confused by the instruction and interpreted it to overstate the required degree of uncertainty. *Ibid.*

In *Victor v. Nebraska*, the Supreme Court limited its holding in *Cage*, reasoning that the mere use of the term "moral certainty" in a jury instruction defining reasonable doubt by itself did not violate due process. The Court determined that the term "moral certainty," read in the context of the instruction in *Victor*, merely impressed upon the jury the need to reach a subjective state of near-certitude of guilt. The Court found no reasonable likelihood that the jury would have understood the phrase to be disassociated from the evidence in that case. 511 U.S. at 14-16. The Court also found that use of the term "moral certainty" in the Nebraska jury instruction on reasonable doubt did not violate due process because the jurors were further instructed that they had to have an abiding conviction as to the defendant's guilt; the instruction equated doubt sufficient to preclude moral certainty with doubt that would cause a reasonable person to hesitate to act; and the jurors were told that they should be governed solely by the evidence introduced before them, without indulging in speculation, conjectures, or inferences not supported by the evidence. *Id.* at 21-22. The Court distinguished these jury instructions from the instruction found unconstitutional in *Cage*, noting that in *Cage* the instruction merely told the jury that they had to be morally certain of the defendant's guilt without any additional explanations that would give meaning to the phrase "moral certainty." *Ibid.*

The Sixth Circuit has held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair. In *Austin v. Bell*, 126 F.3d 843,

-18-

847 (6th Cir. 1997), the Sixth Circuit Court of Appeals ruled that a reasonable doubt instruction, which stated that moral certainty was required to convict the defendant on a criminal charge, did not impermissibly lower the burden of proof.  The instruction in that case included an additional statement that reasonable doubt was engendered by "an inability to let the mind rest easily" after considering all of the proof in the case. *Ibid*.  That language, the court believed, lent content to the phrase "moral certainty."  *Ibid*.  In context, the court concluded, the phrase did not create a reasonable likelihood that the jury impermissibly applied the jury instruction.  *Ibid; see also Cone v. Bell*, 243 F.3d 961, 971-72 (6th Cir. 2001), *reversed on other grounds by Bell v. Cone*, 535 U.S. 685 (2002).

This Court believes that the reasonable doubt instruction in this case cogently conveyed to the jurors the degree of certainty they must possess according to the Constitution before they could convict.  Like the acceptable jury instruction in *Victor*, the trial court's reasonable doubt instruction referred to an "abiding conviction" as to the defendant's guilt and equated doubt sufficient to preclude moral certainty with doubt causing jury members to hesitate to act.  The trial court also instructed the jury that the petitioner was presumed innocent; the burden of proof never shifted from the prosecution; and the petitioner was not required to come forward with any evidence.  The petitioner is therefore not entitled to habeas relief on this claim.

Furthermore, the trial court's instruction that the jury had a "duty" to bring back a verdict of guilty if they have an abiding conviction that the People have met their burden of proof and a "duty" to bring back a verdict of not guilty if they do not have such a conviction was not improper. The trial court's instruction merely informed the jury that they had a duty to deliberate and reach a decision in accordance with the burden of proof as it was explained to them. The state court's

-19-

determination of this issue was not contrary to, or an unreasonable application of *Cage*, *Victor*, *Winship*, or other Supreme Court precedent.

B.

In his fourth stated ground for relief, the petitioner challenges the constitutionality of his sentence. He asserts that the sentencing judge based his sentence on the judge's conclusion that he had committed murder when he was only convicted of manslaughter. He claims that the imposition of a prison term of ten to fifteen years is grossly disproportionate in light of the offense and the offender since it exceeds the top end of the State's sentencing guidelines range and amounts to the absolute maximum sentence allowable under law.

At sentencing, the judge justified the sentence he imposed on the petitioner by explaining that he believed the crime was very serious:

> A man is killed because he had a bottle; Mr. Berry had a gun. And[] then according to his own testimony, when he left his house after he killed him, he was on his way to get an AK 47. The only person that had a gun in this case was him. The only person that made any threats was him. The only person that fired any shots was this man here. If he hadn't done what he did that man would be alive, and Mr. Berry would be doing his business. But[] this whole thing was precipitated by him. It was totally unnecessary. A life was wasted.
> ...
> This is a dangerous situation. We have these very nice people on the jury who had never heard a case before. I had to explain the law to them. And[] they had to try to absorb the difference between murder and manslaughter in the few minutes they had to decide this case. And[] they don't know the difference; we know the difference. This is a murder case; it's plain and simple. He had no business doing what he did.
> He overstepped his bounds. He fired a number of shots. He endangered a number of people. And[] I'm not really concerned about the guidelines. There has been a death here. I don't question the jury's verdict; they did what they thought was best. But now, the sentencing is up to the Court.
> ...
> Well, nobody assaulted Mr. Berry. Mr. Berry went up there with a gun. When that man told him to leave the store, he never made a  – he never stabbed at him, he never

-20-

> did anything.  And[] the man that he killed had a bottle.  Bottles do not rate with
> guns.
> ...
> And[] the only thing that I regret about this case is that I could not have sentenced
> him for the gravity of the offense that he committed.  Because this is a useless,
> senseless killing.  And[] the sentence should be even more severe than that.

Sentencing Tr. at 7-10.

The state court found no merit in the petitioner's argument that the sentencing judge

improperly sentenced the petitioner as if he had committed murder:

> Here, the trial court stated that defendant had committed murder, and accordingly
> imposed the maximum sentence possible for the actual conviction of manslaughter.
> We find no error requiring reversal.  Where there is record support that a greater
> offense has been committed by a defendant, it may constitute an aggravating factor
> to be considered by the court at sentencing.  *People v. Shavers*, 448 Mich. 389, 393;
> 531 N.W.2d 165 (1995).

*People v. Berry*, No. 210038, slip op. at 4.

In sentencing, "the punishment should fit the offender and not merely the crime."  *Williams*

*v. New York*, 337 U.S. 241, 247 (1949).  To achieve that goal, "a judge may appropriately conduct

an inquiry broad in scope, largely unlimited either as to the kind of information he may consider,

or the source from which it may come."  *United States v. Grayson*, 438 U.S. 41, 50 (1978) (quoting

*United States v. Tucker*, 404 U.S. 443, 446 (1972)).  The Supreme Court, however, has held that a

sentence imposed on the basis of "misinformation of constitutional magnitude" violates due process.

*Tucker*, 404 U.S. at 447.

The petitioner has not shown that his sentence was based on "misinformation of a

constitutional magnitude."  The sentencing court's consideration of factors other than the offense

of conviction, including evidence of crimes for which the defendant was not tried, does not amount

to a constitutional violation.  *See Collins v. Buchkoe,* 493 F.2d 343, 345 (6th Cir. 1974).  The

-21-

sentencing judge reached his conclusion about the seriousness of the crime by considering the evidence that the petitioner was armed with a gun while the victim had only a bottle; the petitioner was angry at the store employees and repeatedly threatened them; and the petitioner repeatedly returned to the store to confront the employees. The sentencing judge presided over the petitioner's trial, and he properly could consider information he learned there in fashioning the sentence. *See United States v. Richardson*, 949 F.2d 851, 859 (6th Cir. 1991). The state court's resolution of this issue was not contrary to or an unreasonable application of Supreme Court precedent.

The petitioner also asserts that his sentence was disproportionate in violation of the Eighth Amendment. A habeas petitioner who seeks to challenge the severity of a prison sentence on Eighth Amendment grounds faces a formidable challenge. Generally, he may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Ibid.* Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Ibid.* The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.

-22-

In *Lockyer*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.  The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980).  The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court.  *Lockyer*, 538 U.S. at 72-77.

A plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence.  *See Harmelin*, 501 U.S. at 965.  As the Supreme Court observed in *Lockyer*, it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime.  *Id*. at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001) (citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272.  Rummel was convicted

-23-

of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison.  He was sentenced as a recidivist to life imprisonment with the possibility of parole.  His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison.  The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment.  In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court recently reaffirmed *Rummel* and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony conviction.  *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

In this case, the Court does not believe that the petitioner's sentence of ten to fifteen years for manslaughter violated the Eighth Amendment.  Michigan law allowed a prison term of not more than fifteen years for this offense.  Mich. Comp. Laws §750.321.  The challenged sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (citation omitted) (quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).  "As long as the sentence remains within the statutory limits, trial

-24-

courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at 301 (quoting *Williams*, 337 U.S. at 245). There is no Eighth Amendment violation here.

The petitioner's claim that the trial court incorrectly calculated the sentencing guidelines does not entitle him to habeas corpus relief. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on state law. Consequently, these claims are not cognizable on federal habeas corpus review.

Given the nature of the offense and the fact that the petitioner was sentenced within the statutory limits, this Court finds that the petitioner's sentence does not offend the Eighth Amendment and he is therefore not entitled to habeas corpus relief with respect to this claim.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 1, 2006

-25-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS